CASE 98—PETITION EQUITY—MAY 28.

# Simpson's ex'x vs. Loving, Jackson, &c.

APPEAL FROM WARREN CIRCUIT COURT.

1. The official acts of a clerk, who had been placed in the office of county court clerk of Warren county, in 1862, by authority of the "Provisional Government of Kentucky," cannot be regarded as valid for any purpose. Neither the political power of the United States, nor of the State of Kentucky, have ever recognized such provisional government as an existing *de facto* government.

2. A deed acknowledged before, and recorded by, an officer whose official acts are invalid, cannot be considered as recorded, and as constructive notice, nor can a certified copy be regarded as evidence; yet the original deed may be treated as an unrecorded instrument, quite as good as a title bond, and connected with the possession, such notice, to the world of ownership of the land held under it, as in equity, to protect the equitable title.

3. The ante-dating of a deed, making it over eight months previous to its acknowledgment for record, would have rendered the recording as unavailing, only from the date of the acknowledgment; and, as an unrecorded instrument, it should be regarded as of this latter date.

J. R. UNDERWOOD,            For Appellant,

CITED—

6 *Mon.*, 290 ; *Hynes' heirs vs. Campbell.*

1 *Bibb*, 278 ; *Scott vs. Clarkson's ex'r.*

1 *Bibb*, 313 ; *Bibb vs. Prather.*

4 *Bibb*, 340 ; *Cole vs. Cole's adm'r.*

3 *Mar.*, 179 ; *Griffith vs. Depew.*

3 *Mon.*, 72 ; *Barr vs. Stewart.*

5 *Mon.*, 408 ; *Brown vs. East.*

6 *Mon.*, 388 ; *Payne vs. Wallace.*

4 *J. J. M.*, 169 ; *Funk vs. McKeown.*

2 *Dana*, 113 ; *Vaughan vs. Myers*.

5 *Dana*, 576 ; *Shepherd vs. McIntire*.

12 *B. Mon.*, 288 ; *McDonald vs. Fleming*.

2 *Met.*, 498 ; *Patterson vs. Miller*.

1 *Mar.*, 86 ; 3 *Littell*, 459 ; 1 *Met.*, 143.

SCOTT,                                    For Appellees.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Wm. C. Simpson, the son of the testatrix, Nancy Simpson, had purchased of Mitchell the "Kinlock" residence, with several acres of land, in or near Bowling Green, and still owed a large part of the purchase money, for which a lien was reserved in the deed to him. Rowland Whitney had become the owner of the two thousand dollar note described therein, and J. R. Skyles owned the other, being a balance of six hundred and ninety-one dollars, with interest on both from January 1, 1861.

W. C. Simpson made his mother a deed to this property in February, 1862, but a few days before the "Confederate" army evacuated the town of Bowling Green, and State of Kentucky, and ante-dated it to January 1, 1861. He acknowledged this deed before Jones, who had been placed in the office of county court clerk of Warren county, by authority of the "Provisional Government of Kentucky," superseding the legitimate county clerk under the Constitution and laws of the legitimate State government.

It is proved in the case, and known as a historical fact of the late war, that the Confederate army took forcible possession of this town September 18, 1861, and a small portion of the territory of the State, and, some months thereafter, some portion of the people, sympathizing with the rebellion, organized what they termed a provisional State government.

It is now insisted that this was a government *de facto*, and that the official acts of its officers must be recognized.

At the time the Southern army evacuated the soil of Kentucky there had not been an important battle fought within her territorial limits; the only one approaching importance may be said to be "Mill Spring." Nothing indicated permanence in the occupation of even the small amount of the territory then possessed by it.

Mr. Wheaton, on this subject (*in his Laws of Nations by Lawrence, p.* 47) says: "Until the independence of the new State has been acknowledged, either by the foreign State where its sovereignty is drawn in question, or by the government of the country of which it was before a province, courts of justice and private individuals are bound to consider the ancient state of things as remaining unaltered."

And in *Kennett vs. Chambers, the Supreme Court of the United States* (14 *How.,* 38) says: "It belongs exclusively to the political departments of the government to recognize or to refuse to recognize a government in a foreign country, claiming to have displaced the old and established a new one." "The same principle is applied to a State of the Union. So far as the United States are concerned, in case of conflicting claims to the government of a State, it belongs to the political and not judicial power of the Federal government to decide them." (*Luther vs. Borden,* 7 *How.,* 1.)

*Phillimore on International Law,* 2d *volume, pages* 17–22, says: "There should be the existence of a government acknowledged by the people over whom it is set, and ready to prove its responsibility for their conduct when they come in contact with foreign nations."

President Jackson, in his special message of December 21, 1836, said : "All questions relative to the government of foreign nations, whether of the old or of the new world, have been treated by the United States as questions *of fact only;* and our predecessors have cautiously abstained from deciding upon them until the clearest evidence was in their possession to enable them not only to decide correctly, but to shield their decisions from unworthy motives."

There are rules prescribed for the political departments, but they must act before the judiciary ; and when the political departments refuse or fail to recognize a government *de facto,* the judiciary never does so, in the cases of foreign governments.

Neither the political departments of the United States nor of the State of Kentucky have ever recognized this provisional government of Kentucky as an existing *de facto* government; nor does this court feel authorized to do so ; for, even if not precluded until the political departments should act, yet, if tested by even the rules governing their action, this court sees nothing in the facts to raise it to the dignity of even a *de facto* political existence; hence the official act of Jones cannot be regarded as valid for any purpose.

But Mrs. Simpson was a *bona fide* purchaser from her son for a valuable consideration, and in possession; therefore, whilst her deed cannot be considered as recorded, and constructive notice of her purchase, nor can a certified copy be regarded as evidence, yet the original deed can be treated as an unrecorded instrument, quite as good as a title bond ; and, connected with her possession, such notice, to the world of her ownership, as, in equity, to protect her equitable title.

Therefore, whilst she nor her executrix can exonerate the property from liability for the outstanding purchase price owing by Wm. C. Simpson, yet her executrix will be protected against the other attaching creditors, and entitled, as against his representatives, he being dead, to a rescission of the contract and a lien upon the land, next in priority to Whitney and Skyles, for what she may have paid him, without interest, she paying as rents, for the use of the place, the interest on her unpaid purchase price of two thousand dollars, from January 1, 1863, as provided and described in the deed; or, at the election of the executrix, she may pay the outstanding purchase price to Whitney and Skyles, and will then be entitled to a conveyance of the legal title from W. C. Simpson's heirs, and a settlement with his representatives, deducting the amount which she still owed on the premises from the amount thus paid, and for a judgment for the remainder due her.

The ante-dating of the deed, making it over eight months previous to its acknowledgment for record, would have rendered the recording as unavailing, only from the date of the acknowledgment, had it been before a legitimate officer; and, even as an unrecorded instrument, it should be regarded as of this later date; but, as the evidence does not contaminate the purchase and possession with fraud, and as it must be regarded as *bona fide*, it will protect her equities existing when the contract was by parol.

Whatever may have been Mrs. Simpson's political proclivities, and however ardent may have been her sympathies with the Southern cause, yet she was a citizen of Kentucky, unconvicted with any overt acts of treason, and the law throws around her and her rights its protecting shield. Even if she incurred forfeitures, of

Simpson's ex'x vs. Loving, Jackson, &c.

which there is not the slightest evidence, it would be to the government and not to individuals.

The attaching creditors have no right to take this property from her; therefore, whilst we concur with the chancellor in disregarding the act of Jones as county clerk, we cannot do so as to the legal consequences flowing therefrom.

The judgment is reversed, with directions for further proceedings as herein indicated.